2024 IL App (2d) 230517-U
No. 2-23-0517
Order filed February 21, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2491 |
| BRIAN HURTADO, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Mullen concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court did not abuse its discretion in granting the State's petition for pretrial detention and imposing a no-contact order.

¶ 2     On November 16, 2023, the defendant, Brian Hurtado, was charged with four counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2022)), a class M felony, one count of aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1)), a class 2 felony, and one count of possession of a firearm by a street gang member (*id.* § 24-1.8(a)(1)), also a class 2 felony. The circuit court of Kane County granted the State's verified petition to deny the defendant's pretrial

release pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). The defendant appeals. We affirm.

¶ 3    This appeal is brought pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023). The Act abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022).

¶ 4    In Illinois, all persons charged with an offense are eligible for pretrial release. *Id.* §§ 110-2(a), 110-6.1(e). Pretrial release is governed by article 110 of the Code as amended by the Act. *Id.* § 110-1 *et seq.* Under the Code, as amended, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 5    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)); (2) the defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)); and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).

---

[1]This name is not official, as it does not appear in the Illinois Compiled Statutes or the public act. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

¶ 6      In his appeal, the defendant argues that the State did not show, by clear and convincing evidence, that either of the latter two requirements was met.  Thus, he argues, the trial court erred in finding that the State had met its burden and in ordering him detained.  "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question."  *Chaudhary v. Department of Human Services,* 2023 IL 127712, ¶ 74.

¶ 7      We review the court's decision to deny pretrial release under a bifurcated standard.  *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13.  Specifically, we review under the manifest-weight-of-the-evidence standard the court's factual findings as to dangerousness, flight risk, and whether conditions of release could mitigate those risks.  *Id.*  A finding is against the manifest weight of the evidence only where it is unreasonable or not based on the evidence presented.  *Id.*  We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release.  *Id.* An abuse of discretion also occurs only when the trial court's decision is unreasonable.  *Id.*

¶ 8      The defendant first argues that the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to the safety of any person or the community.  He argues that the fact that he had no criminal history or other record of violent acts showed that he did not pose a threat to anyone, and in finding to the contrary, the trial court improperly relied solely on the nature of the offense.

¶ 9      In making a determination of a defendant's dangerousness, a trial court may consider, among other things: (1) the nature and circumstances of any charged offense, including whether it is a crime of violence or a sex crime, or involved a weapon; (2) the defendant's characteristics and history, including any criminal history indicative of violent, abusive, or assaultive behavior, and any psychological history indicative of a violent, abusive, or assaultive nature, and the lack of any such history; (3) the identity of the person believed to be at risk from the defendant and the nature

of the threat; (4) statements by the defendant and the circumstances of such statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of any victim or complaining witness; (7) the defendant's access to any weapon; (8) whether the defendant was on probation, parole, or the like at the time of the charged offense or any other arrest or offense; and (9) any other factors that have a reasonable bearing on the defendant's propensity for violent, abusive, or assaultive behavior, or the lack of such behavior. *Id.* § 110-6.1(g).

¶ 10    In the present case, the evidence provided by the State included a police synopsis of the incident that led to the defendant's arrest.  The synopsis stated that, during the early evening on November 11, 2023, the defendant and his brother Carlos Hurtado, Jr., were out walking with their friend Jaylin Clark.  Clark later provided the following account to police.  The three men walked to an area near the railroad tracks in Elgin where there was a camp of homeless people, to "smoke" and eat.  The defendant was approached by the victim, Juan Ambriz, and they began to argue about the defendant's relationship with a woman who was the mother of Ambriz's child.  The argument had begun to subside when another individual walked past them and commented to Ambriz, "Didn't you say you were going to merk him next time you saw him?"  (According to the author of the police synopsis, "merk" is slang meaning "murder.")  The argument between the defendant and Ambriz then escalated.  The defendant pulled a gun from his front waistband.  Carlos did the same.  Ambriz then pulled something from his own waistband, but Clark did not recognize it as a gun.  The defendant shot Ambriz three times.  Clark did not think Carlos shot his gun.  The defendant and his brother ran, and Clark and a woman who was friends with Ambriz, Alisha Elizondo, called 911 and tried to administer first aid to Ambriz.  Clark waited for the police to arrive and led them to Ambriz.  Clark identified photos of the defendant and Carlos, and stated that he had seen the defendant shoot Ambriz.  The next day, Clark was re-interviewed and told the

police that earlier that morning he had received a call from Carlos, who asked him about his "loyalty" to the defendant and Carlos. Carlos also told Clark that he and the defendant "were good" and had disposed of the gun. Carlos sent Clark some Snapchats, but Clark deleted them and did not remember their content.

¶ 11 Based on this evidence, the trial court's determination that the defendant posed a real and present threat to the safety of Clark, Elizondo, and the general community was not against the manifest weight of the evidence. Although the defense argued that the defendant's actions were the result of provocation (the comment that Ambriz had earlier said that he would "merk" the defendant), the trial court did not regard this as justification for the defendant's actions in pulling out a gun and precipitously shooting Ambriz, and we cannot say that this finding was erroneous. Further, the defendant was carrying a gun despite the fact that he had no Firearm Owner's Identification Card, indicating that he was unwilling to abide by restrictions on his access to weapons. And although it was Carlos, not the defendant, who called Clark the next morning to ask about his "loyalty," it is a reasonable inference that the defendant knew of the call and was a willing participant in the attempt to obstruct justice. These are specific articulable facts that supported the trial court's determination that the defendant posed a threat to the community as well as to the witnesses, Clark and Elizondo.

¶ 12 The defendant next argues that the State failed to prove that no conditions or combination of conditions could have mitigated the risk of further violence and the trial court failed to adequately consider alternatives to pretrial detention. Under section 110-6.1(g)(3) of the Code, an order for pretrial detention must be based on, among other things, clear and convincing evidence that "no condition or combination of conditions" of pretrial release can mitigate the real and present threat to safety posed by the defendant. *Id.* § 110-6.1(g). If the trial court finds that the

State proved a valid threat to someone's safety or the community's safety, it must then determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community ***." *Id.* § 110-5(a). In making this determination, the trial court should consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the defendant's release; and (5) the risk that the defendant will obstruct or attempt to obstruct the criminal justice process. *Id.* No single factor is dispositive. *Id.* As with the finding of dangerousness, we review the trial court's finding, regarding whether the imposition of conditions on a defendant's pretrial release would mitigate the safety risk posed by the defendant, under the manifest weight of the evidence standard. *Indeck Energy Services,* 2021 IL 125733, ¶ 56.

¶ 13 Here, the trial court heard and considered the nature of the charged offenses and the circumstances of the incident, the defendant's past access to guns and unwillingness to obey laws restricting his access to them, and the defendant's brother's actions in contacting Clark to ask about Clark's "loyalty." The defendant argues that the trial court erred because, in its written explanation of why no conditions of release could mitigate the danger posed by the defendant's release, it referred only to the defendant's dangerousness, saying that the defendant's "obvious inability to consider other appropriate ways to address personal issues makes him a real threat to the community." However, the specific nature of the threat posed by the defendant is relevant when considering whether that threat can be mitigated by the imposition of conditions of release. *People v. Jones*, 2024 IL App (2d) 230534-U, ¶ 20. Based on the evidence heard by the trial court, we cannot conclude that the trial court's determination that no pretrial release conditions could

adequately protect the victim's safety was against the manifest weight of the evidence. *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 14   For all of these reasons, the trial court did not abuse its discretion by granting the State's motion for pretrial detention.

¶ 15   The defendant's final argument is that, even if his pretrial detention is upheld, the trial court erred in imposing the condition that he was not to have any contact with Clark, Elizondo, and his brother Carlos. The State counters that section 110-6.1(m)(2) allows the court to enter such an order with respect to a victim "or other interested party," and these three were all witnesses to the offense. See 725 ILCS 5/110-6.1(m)(2) (West 2022). As with any other condition of detention, we review the trial court's decision to order no contact for an abuse of discretion.

¶ 16   Here, the specific articulable facts of the case support the trial court's decision to order the defendant to have no contact with Clark, Elizondo, and Carlos. Carlos's phone call asking Clark about his "loyalty" suggests that the brothers were attempting to prevent witnesses' cooperation with the police in investigating the offense. Coupled with the fact that the defendant acted violently and killed Ambriz and that Carlos also pulled a gun during that incident, the trial court had ample reason to restrict the defendant's access to the witnesses to protect their safety as well as to prevent attempts to obstruct justice. The trial court did not abuse its discretion in ordering no contact.

¶ 17   The pretrial detention order of the circuit court of Kane County is affirmed.

¶ 18   Affirmed.