2024 IL App (1st) 232275-U

No. 1-23-2275B

FIRST DIVISION
March 25, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. CR 0886201 |
| | ) | 23 CR 088301 |
| RAYVON PARKER, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Timothy J. Joyce, |
| | ) | Judge presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

*Held*:         We reverse and remand for the trial court to make express findings as to why no condition of release was appropriate under the Pretrial Fairness Act.

¶ 1      Defendant-appellant Rayvon Parker appeals from the circuit court's orders granting the State's petitions for pretrial detention and denying defendant's motion to reconsider. For the following reasons, we reverse and remand for further proceedings.

¶ 2                      BACKGROUND

¶ 3    This appeal concerns detention orders entered in two separate cases, which stem from defendant's alleged involvement in a May 2023 shooting and his eventual arrest in July 2023. In case 23 CR 886201, defendant was charged with several counts of attempt murder, as well as aggravated battery with discharge of firearm. In that case, the State filed a petition for detention premised on the attempt murder, alleging defendant posed a real and present threat to the safety or any person or to the community.

¶ 4    In case 23 CR 886301, defendant was charged with armed habitual criminal, as well as unlawful use of a weapon by a felon and aggravated unlawful use of a weapon. The State filed a separate petition for pretrial detention in that case, premised on the armed habitual offense. The State alleged that defendant was a convicted felon and "armed with a loaded 40 caliber semi-automatic handgun that was used in a shooting which occurred on 5/28/23 where he was identified as the shooter."

¶ 5    The record reflects that prior to the filing of the petitions for detention, defendant waived his right to appointed counsel and elected to proceed *pro se*.

¶ 6    On October 6, 2023, the court held a hearing at which defendant argued in support of a number of *pro se* motions, including a motion to dismiss and a "motion to review bond."

¶ 7    In support of the motion to review bond, defendant stated that he is the owner of a publishing company, a "philanthropist," and the father of two eight-year-old girls. He also alleged that the State relied on "false testimony" to connect him to the May 2023 shooting. He denied he was a threat and asked the court to release him with conditions.

¶ 8    Asked by the court to respond to defendant's motion to review bond, the State proceeded by way of proffer on its petitions for detention, noting that the facts of both cases were "intermingled."

¶ 9    The State proffered that evidence would show that in the afternoon of May 28, 2023, the male shooting victim went to a house on the 8600 block of South Loomis Boulevard. A girl at the home "got water on the victim" with a hose. The victim "confronted the girl, who apologized." The victim told "other people in the backyard what happened" and then got into an argument about his interaction with the girl.

¶ 10    The victim then went "into the alley where he observed the defendant" in a car. The defendant exited the car with a gun and "patted the victim down" before driving away. A few minutes later, the victim saw defendant return to the backyard with a gun. The victim turned, and the defendant shot him eight times. The victim was paralyzed as a result of the shooting.

¶ 11    The State proffered that Chicago police recovered six spent shell casings "near a gate leading to the gangway where the victim was shot." In July 2023, the victim identified defendant as the shooter.

¶ 12    On July 25, 2023, Chicago police arrested defendant for attempt murder. At that time, police recovered from defendant's waistband a loaded Ruger 40 caliber semiautomatic handgun. That gun was sent to the Chicago Police firearms lab, where it was compared with cartridge casings from the site of the shooting. The State proffered that "preliminary testing" showed that the casings matched the handgun recovered from defendant.

¶ 13    As to criminal background, the State proffered that defendant had: (1) a 2020 conviction for unlawful use of a weapon by a felon (UUWF); (2) a 2018 criminal damage to government property conviction; (3) a conviction for aggravated battery to a police officer causing great bodily harm; (4) a 2009 UUWF conviction; and (5) a 2009 conviction for possession of a controlled substance.

¶ 14     The State argued that defendant posed a real and present threat to "to the safety of any person or persons in the community based on the facts of the attempted murder that he shot this victim eight times, he is now paralyzed, and the defendant continued to carry that gun, which was recovered from him about two months later."

¶ 15     When the court asked defendant to respond, he urged that the State's proffer that the victims identified him was "contradictory" insofar as the victim claimed to have turned away. Defendant asked the court to "grant me bond *** and apply any conditions you see fit to ensure that I return."

¶ 16     The court proceeded to find that the State had "shown by clear and convincing evidence that the proof is evident and the presumption great" that defendant committed the eligible offenses of attempt first degree murder with a firearm as well as armed habitual criminal. The court also found that defendant posed a "real and present threat to the safety of persons in the community, including the alleged victim", citing defendant's criminal history.

¶ 17     The court further stated:

> "I believe further that no [condition] or combination of conditions
> set forth in the Pretrial Fairness Act, specifically under 110-10(b)
> can mitigate the real and present threat to the safety of any person
> or person in the community based on the articulable specific facts
> of this case *** and a less restrictive condition will not avoid the
> real and present threat to the safety of any person[] or persons in
> the community."

The court thus ordered defendant detained under the Pretrial Fairness Act in both cases.

¶ 18    On October 16, 2023, defendant filed a *pro se* "Motion for Reconsideration of Order Denying Bail" in which he stated that his two daughters depended on him. He indicated that he resided for a time in San Diego before he returned to Chicago in March 2023 to help care for his father. He stated that after serving several years in prison, he did volunteer work with First Defense Legal Aid and founded a small publishing business. He described himself as a "philanthropist" who worked against homelessness and to promote public safety awareness.

¶ 19    In the same motion, defendant accused the State of "perjury." He said the State had "no documentation" or testimony to show that he was arrested with the weapon used in the May 2023 shooting. Defendant further stated he posed no threat to any person, noting that that the victim in the shooting has "around the clock police and security present" in a hospital.

¶ 20    The court heard argument on the motion to reconsider at a hearing on October 30, 2023 and then denied the motion.[1] In doing so, it remarked "there are no combination of circumstances or conditions which would protect the safety of the public and any number of numerous persons who may have something to do with this case," including the victim. The court also remarked that defendant "carries substantial risk of flight because of his ability to travel outside the city as has been indicated by a statement he was living in San Diego."

¶ 21    On November 13, 2023, defendant filed a handwritten notice of appeal, referencing "Illinois Supreme Court Rule 604(c)" and setting forth numerous arguments indicating he

---

[1] Before ruling, the court acknowledged it had made a mistake when it told defendant of potential sentence he faced at a prior hearing. Specifically, the court had said he faced a maximum of 55 years, when he actually faced a sentence of up to natural life. After the court confirmed that defendant understood that he could be sentenced to natural life, the court asked if defendant still wished to proceed *pro se*. He indicated he did.

sought to challenge the October 16 detention order as well as the October 30, 2023 denial of his motion for reconsideration.

¶ 22    Three days later, defendant filed a notice of appeal using the preprinted Supreme Court form for a Notice of Pretrial Fairness Act Appeal pursuant to Rule 604(h). That notice of appeal indicate that he wished to challenge pretrial detention on the grounds that: (1) the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the detainable offenses; (2) the State failed to prove that defendant posed a real and present threat to the safety of any person or to the community based on the specific, articulable facts of this case; (3) the State failed to meet its burden to prove that no condition or combination of conditions could mitigate the real and present threat; (4) the court erred in determining "no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings"; (5) he was denied a fair hearing prior to the detention order because he was not provided discovery by the State and his right to have witnesses testify on his behalf was ignored"; and (6) it was inappropriate for the judge to "find defendant poses a flight risk" where the State did not argue or present evidence that he was a flight risk.

¶ 23    In December 2023, on this court's own motion, the Office of the State Appellate Defender was appointed to represent defendant. Defendant's counsel has filed a brief whose argument is focused on a single claim of error: that the State failed prove by clear and convincing evidence that no condition or combination of conditions could mitigate the threat posed to any person or the community. See 725 ILCS 5/110-6.1(e)(3) (West 2022). The brief otherwise states that defendant "stands on the remaining issues detailed in his *pro se* notice of appeal."

¶ 24    The State has filed a response brief in which it argues that defendant has forfeited any claim that the State failed to meet its its burden to show that (1) the proof was evident that defendant committed the offenses at issue and (2) that defendant presented a danger to any person or the community. See 725 ILCS 5/110-6.1(e)(1,2) (West 2022). Forfeiture aside, the State argues that it met these first two threshold requirements.

¶ 25    Nevertheless, the State's brief acknowledges there was error with respect to the separate statutory prerequisite for detention under section 110-6.1(e)(3), conceding that the trial court "erroneously found that no conditions would mitigate defendant's threat to any person or the community." See 725 ILCS 5/110-6.1(e)(3) (West 2022). The State acknowledges the State "did not offer any evidence on this element." Citing *People v. Stock*, 2023 IL App (1st) 231753, the State asks that we remand the matter for additional proceedings.

¶ 26    For the following reasons, while we reject the State's concession, we ultimately reverse the pretrial detention orders and remand for further proceedings consistent with this decision.

¶ 27                                    ANALYSIS

¶ 28    As threshold matter, we note that we have jurisdiction because defendant filed a handwritten notice of appeal on November 13, 2023, within 14 days of the October 30 order denying his motion for reconsideration from the detention order. See Ill. S. Ct. R. 604(h)(2) (Dec. 7, 2023) ("Review shall be by Notice of Appeal filed in the circuit court within 14 days of the entry or denial of the order form which review is being sought.") The State suggest that the November 13 notice of appeal was "deficient on its face" because it mistakenly referred to Rule 604(c) and not Rule 604(h) and because it did not use the supreme court form for a notice of appeal pursuant to Rule 604(h). However, liberally construed, the original handwritten notice of appeal made clear that defendant sought to challenge the pretrial detention order. See

*People v. Smith*, 228 Ill. 2d 95, 104-05 (2008) (a notice of appeal is to be "construed liberally" and will be sufficient to confer jurisdiction when taken as a whole, it identifies the judgment complained of and advises the appellee of the nature of the appeal."); see also *People v. Gathing*, 2023 IL App (3d) (the "failure to comply with Rule 604(h)(2)'s requirement that the notice of appeal describe the relief requested and the grounds for that relief is not jurisdictional. [Citations.]"). Thus, the first *pro se* notice of appeal conferred appellate jurisdiction.

¶ 29    The second *pro se* notice of appeal, filed November 16, 2023, is not the controlling notice of appeal. We note that standing alone, that notice of appeal would be untimely to confer jurisdiction, as it was not filed within 14 days. See Ill. S. Ct. R. 604(h)(2) ("Review shall be by Notice of Appeal filed in the circuit court within 14 days of the entry or denial of the order from which review is being sought.") Rather, it appears that defendant was attempting to amend his original November 13 handwritten notice of appeal by adding new arguments on the designated Rule 604(h) form he filed three days later. Although this action was understandable, our supreme court rules simply do not contemplate an amended notice of appeal from a detention order. Rule 604(h) does not mention any manner in which a defendant may amend a notice of appeal from a pretrial detention order. And Rule 606(d) now explicitly excludes such Pretrial Fairness Act appeals from the procedure for filing an amended notice of appeal set forth in Rule 303(b)(5). See Rule 606 (d) (eff. Dec. 7, 2023) ("Except as provided in Rule 604(h*),* the notice of appeal may be amended as provided in Rule 303(b)(5).")

¶ 30    We now turn to the merits. Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the "Safety, Accountability, Fairness and Equity-Today (SAFE-T)

Act" or the "Pretrial Fairness Act."[2] Under article 110 of the Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2022).

¶ 31        "Section 110-6.1(e) of the Code presumes that all defendants are eligible for pretrial release and places the burden of justifying pretrial detention by clear and convincing evidence on the State." *People v. Stock*, 2023 IL (1st) 231753, ¶ 11; 725 ILCS 5/110-6.1(e) (West 2022). If the State files a petition requesting denial of pretrial release, "the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of another person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230968, ¶ 7; 725 ILCS 5/110-6.1(e), (f) (West 2022).

¶ 32                                    Applicable Standard of Review

¶ 33        Appellate decisions conflict as to the standard of review to be applied to the trial court's determinations that the State met its burden to prove the three threshold requirements that "the proof is evident or the presumption great that the defendant has committed" a qualifying detainable offense (725 ILCS 5/110-6.1(e)(1)); that the "defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" ( id § 110-6.1(e)(2); and that "no condition or combination of conditions set

---

[2] Our supreme court has recognized that "[n]either name is official, as neither appears in the Illinois Compiled Statutes or public acts." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1.

forth in subsection (b) of Section 110-10 of this Article can mitigate" the safety threat or the risk of willful flight. *Id.* §110-6.1(e)(3).

¶ 34    Certain decisions have held that an abuse of discretion standard of review applies to these findings. See *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18 ;*People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. Other appellate decisions have applied the "manifest weight of the evidence" standard of review to the trial court's findings as to whether the State proved the threshold requirements of section 110-6.1(e) by clear and convincing evidence. See, e.g., *People v. Pitts*, 2024 IL App (1st) 232336, ¶ 15 (recognizing some courts have used abuse of discretion standard but "We think the most appropriate standard by which to review this sufficienty question is whether the trial court's findings were against the manifest weight of the evidence."); *Stock*, 2023 IL App (1st) 231753, ¶¶ 12-14 (applying manifest weight standard to court's findings that "proof was evident or the presumption was great" that defendant committed offense and that defendant posed a real and present threat).

¶ 35    A number of recent decisions in this district have reasoned that a mixed standard applies, depending on which section 110-6.1(e) prerequisite to pretrial detention is at issue. Specifically, these decisions have found that the manifest weight of the evidence standard applies to the trial court's determination as to whether the State met its burden to prove that the "proof is evident or the presumption great" that defendant committed a qualifying offense or that defendant "poses a real and present threat" to a person or the community. See *People v. Saucedo*, 2024 IL App (1st) 232020, at ¶ 35 ("Because the first two propositions involve factual findings, we will review those two determinations under the manifest weight of the evidence standard of review."); *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 61-62 (these two determinations "are highly intensive factual questions" and "this court will review the trial

court's factual findings after a detention hearing for the manifest weight of the evidence"). However, these decisions have applied abuse of discretion review to the trial court's determination that no conditions besides pretrial detention could mitigate the threat. See *Saucedo*, 2024 IL App (1st) 232020, ¶ 36 (explaining this determination "involves a trial judge's reasoning and opinion" as the trial court "must exercise a degree of discretion to determine whether any less restrictive means will mitigate the threat a defendant poses to a person or the community."); *Whitaker*, 2024 IL App (1st) 232009, ¶ 63 ("the trial court must exercise discretion" in determining whether less restrictive means will mitigate the threat); *see also People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13 (applying manifest weight standard to trial court's factual findings regarding dangerousness, but ultimate detention decision is reviewed for an abuse of discretion).

¶ 36        We find the mixed approach is well-reasoned. Insofar as the State must prove by "clear and convincing evidence" that "the proof is evident or the presumption great" that the defendant committed a qualifying offense and that defendant poses a real and present threat.725 ILCS 5/110-6.1(e) (West 2022), those factual findings are properly reviewed under the manifest weight of the evidence standard. However, a determination that no less restrictive conditions could mitigate the threat involves an exercise of discretion. See *Saucedo*, 2024 IL App (1st) 232020, ¶ 36. Thus, "we review for an abuse of discretion the trial court's ultimate determination regarding pretrial release." *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 37    The Trial Court's Findings on the First Two Requirements for Pretrial Detention Under Section 110-6.1(e) Were Not Against the Manifest Weight of the Evidence

¶ 38        We note that the brief filed by defendant's counsel argues only a single claim of error regarding the court's determination under section 110-6.1(e)(3) that no conditions short of

pretrial detention could mitigate the threat. See 725 ILCS 5/110-6.1(e)(3). The brief otherwise says defendant "stands on the remaining issues detailed in his *pro se* notice of appeal." The State thus urges that defendant has forfeited any claims of error as to the trial court's determination that the State met the first two threshold requirements for pretrial detention under section 110-6.1(e)(1) regarding proof of the underlying offenses and (e)(2), regarding proof that he posed a real and present threat. That is, the State suggests that if a defendant elects to file a brief, he must present all his claims there and cannot simply refer back to arguments contained in a notice of appeal pursuant to Rule 604(h). There is case law support for the State's forfeiture position. See *People v. Forthenberry*, 2024 IL App (5th), ¶¶ 42-44 (argument forfeited where memorandum "attempts to incorporate arguments in the [Rule 604(h)] notice of appeal into the memorandum by way of reference"); *People v. Acosta*, 2024 IL App 230475, ¶16 (declining to "address the issues raised only in the notices of appeal and not included in OSAD's memoranda" but noting forfeiture is a limitation on the parties and not the court).

¶ 39     In any event, even if we could consider the arguments in defendant's notice of appeal, we would still find that it was not against the manifest weight of the evidence for the trial court to determine that the State met its burden to show by clear and convincing evidence that the "proof is evident or the presumption great" that the defendant committed the underlying offenses. 725 ILCS 5/110-6.1(e)(2) (West 2022).

¶ 40     According to defendant, when responding officers arrived at the scene of the shooting, the victim "refused" to tell them what happened. Defendant also claims the State "misled" the court because it did not "tender[] any evidence" to support that he was arrested with the firearm used in the May 2023 shooting. These contentions are unavailing. Insofar as defendant

complains the State did not tender evidence, the State is expressly statutorily permitted to proceed by way of proffer, as it did in this case. 725 ILCS 5/110-6.1(f)(2)(West 2022). Here, the State proffered that six shell casings were recovered at the site of the shooting, and lab testing showed the shell casings came from the same handgun found on defendant at his arrest. Separately, if the victim initially "refused" to speak to responding officers, the mere fact that the victim did not immediately name defendant would not, in itself, preclude the court from finding that the State met its burden to show the "proof was evident" that defendant was the shooter. Thus, we cannot say it was against the manifest weight of the evidence when the trial court determined that the State met its burden to show that the "proof is evident or the presumption great" that the defendant committed the offenses that formed the basis of the petitions for detention. 725 ILCS 5/110-6.1(e)(1).

¶ 41        Defendant's November 16 notice of appeal also disputed that the State met its burden to prove he posed a real and present threat to the safety or any person or person or the community, based on the specific, articulable fact of the case. See *id*. § 110-6.1(e)(2). However, he did not attempt to argue why the finding was unreasonable, but  merely recited defendant's understanding of the factual allegations surrounding the shooting.[3] In any event, given the State's proffer indicating that defendant shot and paralyzed the victim following an argument,

---

[3] Defendant filled out this portion of the notice of appeal as follows: "Although [defendant] has yet to be tendered any of the statements of any witnesses * ** the specific articulable facts of the case know to him are from testimony given to a grand jury. Alleged victim confronted a little girl whom told people at the house what happen[ed]. Victim is then involved in argument with multiple people. Victim then alleges defendant approached him with a gun, then left. The victim does not allege to [have] contact[ed] police, but admits to return to confront an armed offender."

we cannot say that it was against the manifest weight of the evidence for the trial court to determine that the State met its burden of proof as to a "real and present threat." See *id.*

¶ 42 No Mitigating Conditions

¶ 43 This brings us to the contention set forth in defendant's brief—that the State failed to prove by clear and convincing evidence that "no condition or combination of conditions" could mitigate the real and present threat presented by defendant "based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e)(3). Defendant contends the State "presented no evidence about conditions of release" and "never discussed any possible conditions of release" or why such conditions could not mitigate any threat. In its brief, the State "concedes that the trial court incompletely and thus erroneously found that no conditions would mitigate defendant's threat" and that the State "did not offer any evidence on this element." We disagree.

¶ 44 Section 7(a) of the Pretrial Services Act, which supports the Pretrial Fairness Act, states that "[p]retrial services agencies shall *** [i]nterview and assemble verified information and data concerning the community ties, employment, residency, criminal record, and social background of arrested persons who are to be, or have been, presented in court for first appearance on felony charges, *to assist the court in determining the appropriate terms and conditions of pretrial release*[.]" (Emphasis added.) 725 ILCS 185/7 (West 2022). It is unclear from this record the degree to which pretrial services were involved in this case, potentially because defendant was arrested and confined prior to the Pretrial Fairness Act taking effect and prior to defendant's initial hearing under that act. We also note that while section 6.4 of the Pretrial Fairness Act permits the use of an assessment risk tool to help the court decide upon a defendant's release, that act does not require it. In any event, the record contains ample

- 14 -

evidence supporting the trial court's determination that "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, for offenses listed in paragraphs (1) through (7) of subsection (a)[.]" 725 ILCS 6/110-6.1(e)(3) (West 2022). The potential conditions set forth in section 110-10 include, among other things, reporting in person, refraining from possessing a firearm, refraining from communicating with particular persons, refraining from going to certain areas, being under home supervision with or without electronic monitoring. 725 ILCS 6/110-10(b) (West 2022). All of these conditions, however, require that a defendant be able and willing to comply with and respect the government actors and property necessary to enforce these conditions.

¶ 45          Below, the State proffered that defendant had: (1) a 2020 conviction for unlawful use of a weapon by a felon (UUWF); (2) a 2018 criminal damage to government property conviction; (3) a conviction for aggravated battery to a police officer causing great bodily harm; (4) a 2009 UUWF conviction; and (5) a 2009 conviction for possession of a controlled substance. Collectively, the first four of those offenses demonstrates that defendant is unwilling to relinquish a firearm, despite law requiring him to do so, and that he will use force against government actors and property when it suits him to do so. See, *e.g.*, *People v. Hurtado*, 2024 IL App (2d) 230517-U, ¶ 12 (in determining whether pretrial release conditions can mitigate the threat to people and/or the community, courts may consider (1) the nature and circumstances of the offense[s] charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, (4) the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release,

and (5) the risk that the defendant will obstruct or attempt to obstruct the criminal justice process). This is the antithesis of the ability and willingness to comply with the aforementioned conditions of pretrial release, notwithstanding defendant's contrary statements made to the trial court. *Cf. Stock*, 2023 IL App (1st) 231753, ¶¶ 7, 17, 19 (finding the State failed to prove that less restrictive conditions would not avoid a real and present threat where pretrial services found defendant scored 1 out of 6 on the new criminal activity and failure to appear scales and had no criminal history, and finding that "the bare allegations that defendant has committed a violent offense are not sufficient to establish this element"). We cannot accept the State's concession that the evidence did not exclude the appropriateness of release with some combination of conditions. See *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 17 (observing that the purpose of the Pretrial Fairness Act "is to effectuate the goal of utilizing pretrial release by nonmonetary means to reasonably ensure an eligible person's appearance in court, *the safety of the community, and compliance with the law and with pretrial conditions*, while authorizing the court, upon motion of the prosecutor, to detain when it finds by clear and convincing evidence that no condition or combination of conditions can reasonably ensure those goals" (emphasis added.)).

¶ 46          Defendant also asserts, and the State agrees, that the court did not make the statutorily required "written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat." 725 ILCS 110-6.1(h)(1) (West 2022). This is borne out by the record. Yet, defendant has cited no authority showing that the remedy for this particular violation must be his release.

¶ 47　　In *Stock*, unlike this case, the State presented no evidence showing that no conditions of release were available, but the trial court ordered him to be detained. *Stock*, 2023 IL App (1st) 231753, ¶ 17. In the space provided on the form order to describe why no condition or combination of conditions could mitigate the real and present threat, the court wrote only that " 'The defendant shot a firearm at the complaining witness.' " *Id.* ¶ 8. The reviewing court found that the trial court's written order did not meet the statutory requirement of an explanation of why less restrictive conditions would not avoid a real and present threat. *Id.* ¶ 20 (citing 725 ILCS 5/110-6.1(h)(1)). Moreover, it's important to note that in *Stock*, unlike this case, the defendant had no other criminal history beyond that case and the record demonstrated that the defendant was otherwise a "law-abiding member of the community." *Stock*, 2023 IL App (1st) 231753, ¶ 19.

¶ 48　　Having already determined that evidence was insufficient to show no conditions of release were available, the reviewing court, as a remedy, reversed and remanded, directing the trial court to "enter an order consistent with this opinion with the caveat that we express no opinion about what conditions of pretrial release should or should not be imposed upon defendant and leave that to the discretion of the trial court." *Id.* ¶ 22.

¶ 49　　As stated, in the instant case, we find the record amply supports the determination that anything less than detention would not avoid a real and present threat. Thus, *Stock* is meaningfully distinguishable. In addition, the Act's purpose of protecting the public would be undermined by holding that this error alone compelled defendant's release. See *Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 17. We reverse and remand solely for the trial court to comply with section 110-6.1(h)(1). While nothing precludes the court from reevaluating whether release is appropriate, the record here does not compel that finding.

¶ 50                                                 CONCLUSION

¶ 51          For the foregoing reasons, we reverse and remand for further proceedings consistent with

this order.

¶ 52          Reversed and remanded.