2025 IL App (1st) 251671-U

FIRST DIVISION
November 24, 2025

No. 1-25-1671B

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 25 CR 0761001 |
| CRIS CRAIG, | ) ) | Honorable Margaret Ogarek, |
| Defendant-Appellant. | ) ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's order denying the defendant's request for pretrial release, where there was no condition or combination of conditions that could mitigate the defendant's real and present threat to the community.

¶ 2    The defendant, Cris Craig, appeals from the circuit court's June 11, 2025, written order, denying his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (725

ILCS 5/110 (West 2022)), as amended by Public Act 101-652, commonly known as "the Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act" or the "Pretrial Fairness Act" (Act). See Pub. Acts 101-652, § 10-255 (eff. Jan. 1, 2023); 102-1104, § 70 (eff. Jan. 1, 2023); Ill. S. Ct. R. 604(h)(1) (eff. Oct. 19, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). On appeal, the defendant solely contends that the circuit court erred when it found that the State proved by clear and convincing evidence that no conditions of release could mitigate the risk of his threat to the safety of the community, so as to justify his pretrial detention. For the following reasons, we affirm.

¶ 3                                    II. BACKGOUND

¶ 4      The defendant was arrested on June 6, 2025. On June 11, 2025, he was charged with attempted arson (720 ILCS 5.0/20-1-A-l (West 2022)) and the Sate filed a petition seeking his pretrial detention. At the detention hearing, held on the same day, the State proffered that the following events were captured on video surveillance. At about 12:05 p.m. on June 9, 2025, the defendant, who was wearing a black shirt, red shorts, and flip flops with white stripes, went to the Stickney Police Department located at 6533 West Pershing Road, in Stickney, Illinois. The defendant sprayed fluid from a container onto a backpack, lit the backpack on fire, and pushed it under the personal vehicle of Stickney Police Detective Robert Walik.[1] The defendant then sprayed more fluid onto the fire, causing it to grow. As he walked away, the defendant threw the fluid container back in the direction of vehicle before leaving the premises. Police officers were able to put out the fire and recovered the fluid container, which was a bottle of Flame Glo charcoal lighter fluid. A still image from the surveillance video was sent to the Secretary of State, whereupon the

_____

[1] Upon questioning from the circuit court, the State acknowledged that it did not appear that the defendant had any prior dealings or relationship with this particular police detective.

defendant was identified as the perpetrator, and his address was provided to the police. Upon searching the defendant's residence, inside his basement, the police found a pair of red shorts and a black polo shirt matching the clothes he wore in the surveillance footage. When the defendant was arrested, he was wearing the flip flops from the video.

¶ 5       After the proffer, the State discussed the defendant's criminal background, which included: (1) a 2022 misdemeanor battery conviction (in Berwyn) for which he was conditionally discharged; (2) a 2020 misdemeanor retail theft conviction (in DuPage County) for which he received 200 days in jail; and (3) a 2018 public indecency charge, which was *nolle-prossed* by the State.

¶ 6       The circuit court next asked for a public safety report from the Pretrial Services Department. A pretrial officer testified that the defendant's "new criminal activity" score and his "failure to appear" score were both four out of six, and that he had a violent criminal activity flag. Accordingly, the "pretrial services" recommendation was for "maximum conditions" if released.

¶ 7       In mitigation, defense counsel argued that the defendant should be released on electronic monitoring or home confinement because he suffered from serious mental health issues, which would only be exacerbated by his detention in Cook County jail. Defense counsel pointed out that the defendant was diagnosed with bipolar disorder and schizophrenia, as well as severe mental delays, and would not be able to receive the necessary medication or help while in jail. In addition, counsel pointed out that the defendant was only 30 years old, had graduated from high school, taken some college courses, lived in Berwyn, and had family, in particular, his father, who was present in court and willing to take responsibility for him during pretrial proceedings. In addition, defense counsel highlighted that the defendant had no prior felony or violent criminal convictions.

¶ 8       After hearing the parties' arguments, the circuit court first found that the State met its

burden in proving by clear and convincing evidence that the defendant committed the charged offense, *i.e.* attempted arson. The court observed that the defendant was seen on surveillance footage lighting his backpack and tossing it underneath a police officer's vehicle, and that the subsequent search of his residence revealed items of clothing that matched those he wore in that surveillance footage.

¶ 9     The circuit court next found that the defendant posed a real and immediate threat to the safety of Detective Walik and the community. The court noted that the defendant's conduct of walking into "a squad police parking lot" and attempting to light a vehicle on fire was both "brazen" and "volatile" and therefore a threat to public safety. The court noted that the only reason that the car was not damaged and no one was injured was that police acted quickly and put out the fire.

¶ 10    The circuit court next found that despite the mitigating evidence offered by defense counsel, which it had considered, there was no condition beyond detention that could mitigate the defendant's real and present threat to the community. In this respect, the court found that the defendant's conduct had escalated from misdemeanors to felony charges, that he suffered from bipolar disorder, which caused volatility in his behavior, and that based on his instant actions, it was apparent that he needed "constant surveillance," which could not be addressed simply by having his father making sure that he was regularly taking his medication.

¶ 11    Accordingly, the circuit court granted the State's petition and ordered that the defendant be detained pretrial. In a separate healthcare order, the court further ordered that the defendant be promptly evaluated and treated for "bipolar/schizophrenia."

¶ 12    On August 13, 2025, the defendant filed a motion for relief pursuant to section 110-6.1 of the Act (725 ILCS 5/110-6.1 (West 2022)), arguing that the court had erred in its determination

that no condition or combination of conditions could mitigate the real and present threat he posed to the safety of any person or the community (725 ILCS 5/110-10(b) (West 2022)) and that he should therefore be released from pretrial detention.[2] According to the motion, the defendant's continued detention presented significant and unjustifiable risks to his mental and physical health. Specifically, his documented bipolar disorder and schizophrenia required consistent medical intervention, including a monthly injection essential to stabilizing his condition. Moreover, incarceration in a high-stress, overstimulating environment such as Cook County jail exacerbated his psychiatric symptoms and put him at serious risk of deterioration. According to the motion, while the jail had "some" capacity to provide medical treatment it did not match the consistency and individualized attention available through community-based care.

¶ 13    The motion asserted that releasing the defendant to a supervised environment with conditions such as electronic home monitoring with required mental health treatment would mitigate any threat that he posed to Detective Walik or the community. Specifically, the motion proposed that the defendant's sister, and legal guardian, Marquita Buchanan, supervise him and ensure that he complied with all court-ordered conditions. According to the motion, Buchanan was already familiar with the defendant's treatment needs and was prepared to ensure he received his prescribed medication and attended all required medical and therapeutic appointments.

¶ 14    On August 13, 2025, the circuit court held a hearing on the defendant's motion for relief. There, defense counsel reiterated that imposing electronic home monitoring or other pretrial services conditions would ensure the safety of the community, while also providing adequate mental health treatment to the defendant. In addition, defense counsel pointed out that Buchanan had contacted Riveredge Hospital in Forest Park, where the defendant had been hospitalized in the

---

[2] At this time, the defendant had been incarcerated in Cook County jail for 64 days.

past, and was assured that there was a bed available for him there for treatment upon release. Defense counsel also pointed out that aside from Buchanan, the defendant had additional family support. Specifically, his father was at the initial detention hearing, while his mother and niece were presently in court, and had indicated to counsel that they were willing and able to help with the defendant's care.

¶ 15    At the conclusion of defense counsel's argument, the circuit court inquired whether Buchanan had been the defendant's legal guardian prior to the instant offense. Defense counsel indicated that Buchanan had been the defendant's guardian since 2019, and that he lived with her prior to the offense. Upon further questioning by the court regarding the treatment that would be available to the defendant at Riveredge Hospital, defense counsel explained that the hospital only offered short-term inpatient treatment, where the defendant could be stabilized, but that he would ultimately be released to Buchanan. Defense counsel, however, reassured the court that as the defendant's legal guardian, Buchanan, could instruct the hospital not to release the defendant unless it was to her.

¶ 16    In response to defense counsel's arguments, the State asserted that the court should continue the defendant's pretrial detention because no condition existed that could mitigate the threat he posed to the safety of the community. The State first discussed the defendant's prior criminal history and added that in addition to the misdemeanor offenses noted at the original detention hearing, the defendant had also been convicted of criminal damage to property in 2018 for which he received 240 days in jail. The State then reminded the court of the facts underlying the charged offense, namely that the defendant used lighter fluid to set his backpack on fire and then placed that backpack under a private vehicle inside a police department parking lot. The State asserted that the defendant's conduct could have caused an explosion had the police not reacted

quicker. Based on these facts, the State argued that home confinement with electronic monitoring or curfew could not ensure the safety of the community because both allowed for certain times that the defendant would have free movement.

¶ 17     After hearing the parties' arguments, the circuit court denied the defendant's motion for relief. In doing so, the court first noted that the defendant was not disputing that the State had proved by clear and convincing evidence that he had committed the charged offense and posed a real and present threat to the safety of the community. As to the defendant's arguments regarding why he should be conditionally released pretrial, the court found that contrary to the defendant's position, there was no condition or combination of conditions that could mitigate his threat to the safety of the public. In that respect, the court first noted that according to the pretrial services safety assessment, the defendant had scored four out of six, "which is *** rather high" on both the "new criminal activity" and "failure to appear" scales, and pretrial services had recommended that he be given "maximum conditions" if released.

¶ 18     The court next noted that the defendant's current charged offense, attempted arson, was a violent one. It then discussed the defendant's prior criminal history and observed that it included at least one prior conviction for criminal damage to property, which appeared to show that "this sort of activity [wa]s something that has historically been something [in] which [the defendant] has been engaged."

¶ 19     The court next recited the facts of the case, noting that they "b[ore] repeating" because the defendant's "brazen" and "dangerous" conduct "could have hurt a number of people, not the least of which was *** the detective who owned the car." The court reiterated that the defendant committed the crime in front of a police station in the middle of the day, "when other people w[ere] out and about," and "when anybody could have been walking down that street." Moreover, he "put

lighter fluid on a backpack, lit it, and shoved it underneath a vehicle and then poured more lighter fluid on it to make \*\*\* the fire go bigger," before walking away and throwing that container underneath, "presumably to attempt to have an explosion."

¶ 20    The court acknowledged that the defendant suffered from bipolar disorder and schizophrenia but found that placing him in Riveredge Hospital and then releasing him to Buchanan would not mitigate the danger he posed to the community. The court observed that Buchanan had been the defendant's guardian at the time he committed the instant offense and that she had not been able to ensure that he took the proper medication, which presumably would have prevented him from acting as he had. The court also stated that it disagreed with defense counsel's position that Cook County jail lacked the ability to handle the defendant's mental health issues and found that the defendant could be properly medicated while incarcerated.

¶ 21    The court next addressed the specific conditions of release proposed by defense counsel, namely home confinement with electronic monitoring or curfew. The court noted that because neither of these conditions completely restricted the defendant's movement or his interaction with society, there would be nothing to prevent him from "going into some [other] location, getting more lighter fluid, and doing this again." The court explained that by statute electronic monitoring mandated two days off, and curfew hours were "12 hours on, 12 hours off, give or take." As the court observed, "there are some people who would suggest that this Court can keep somebody in their house 24/7, but that is not how the statute works. That is not what I'm going to do."

¶ 22    Accordingly, the court concluded that there were no conditions that it could impose, other than detention, that would ensure the safety of Detective Walik and the public at large. It therefore denied the defendant's motion and ordered that he remain in pretrial detention.

¶ 23    In a separate healthcare order, the circuit court again ordered that the defendant be promptly

evaluated to determine which medication was necessary to treat his self-reported "acute psychosis" stemming from the failure to receive his monthly "Invega shot" while in pretrial detention.

¶ 24    The defendant now appeals, seeking his release. See Ill. S. Ct. R. 604(h) (eff. Oct. 19, 2023). [3]

¶ 25                                    II. ANALYSIS

¶ 26    At the outset, we note that under the Pretrial Fairness Act, every person charged with an offense is presumed eligible for pretrial release. 725 ILCS 5/110-2(a), 6.1(e) (West 2022). The State must file a verified petition requesting the denial of pretrial release, and the circuit court shall hold a hearing on the petition. *Id.* § 110-6.1(a). When seeking denial of pretrial release, the State bears the burden of proving by clear and convincing evidence that (1) the proof is evident or presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e)(1)-(3).

¶ 27    Where the circuit court orders pretrial detention, to appeal, the defendant must first file a motion for relief with the circuit court requesting the same relief that will eventually be sought on appeal. Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024); see also 725 ILCS 5/110-6.1(i-5) (West 2022) (the circuit court must determine that continued detention is necessary at each subsequent appearance).

---

[3]The defendant did not file an appellate brief in this case. Instead, he filed a notice "In Lieu of Rule 604(h) Memorandum" stating his intention to rely solely on the arguments raised in his motion for relief. See Ill. S. Ct. R. 604(h) (eff. Oct. 19, 2023).

¶ 28    Our review of a circuit court's pretrial detention order is dependent upon the type of evidence presented at the detention hearing. See *People v. Morgan*, 2025 IL 130626. As our supreme court has recently held where live witness testimony is presented, "the circuit court's ultimate detention decision *** in addition to any underlying factual findings supporting th[at] decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence." *Morgan*, 2025 IL 130626, ¶ 54. However, if the hearing proceeds solely by proffer, "the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Id.*

¶ 29    Because the underlying detention hearings here did not involve any live witness testimony, we accord no deference to the circuit court and review its decision to detain the defendant pretrial, *de novo*. *Id*, 2025 IL 130626, ¶¶ 21-22.

¶ 30    Turning to the merits, we note that just as he did before the circuit court, on appeal, the defendant does not dispute that the proof is evident and the presumption great that he committed the qualifying offense of attempted arson, nor that he poses a real and present threat to the safety of Detective Walik or the community. Instead, he solely argues that there are conditions that can mitigate his safety threat. 725 ILCS 5/110-6.1(e)(3) (West 2022). In this respect, the defendant points to the verified supervision plan, which he presented to the circuit court on August 13, 2005, under which he would initially receive inpatient treatment at a mental health facility, and then be released, on electronic monitoring, to his sister and legal guardian, Buchanan, who would then be responsible for ensuring his future compliance with all court orders and necessary treatment. The defendant contends that because Cook County jail does not match the individualized treatment that he would be afforded at the inpatient mental health facility and then home, and legislative intent

supports the release of those who would benefit from such community-based care, the State failed to prove by clear and convincing evidence that there were no conditions that could mitigate the safety threat he posed to the community.[4] For the following reasons, we disagree.

¶ 31    Section 110-5 of the Act lists the factors that the circuit court may consider in determining the conditions of release. 725 ILCS 5/110-5 (West 2022). These factors mirror those the court can consider in determining the defendant's "dangerousness" and include the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and "the history and characteristics of the defendant," such as, *inter alia*, his mental condition, conduct, and criminal history. 725 ILCS 5/110-5(a)(1), (2), (3)(b) (West 2022); *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 49; *People v. Jones*, 2023 IL App (4th) 230837, ¶ 32; *People v. Reed*, 2023 IL App (1st) 231834, ¶ 31.

¶ 32    In addition, section 110-10 of the Act (725 ILCS 6/110-10(b) (West 2022)) sets forth potential conditions for pretrial release, including, *inter alia*, reporting in person, refraining from communicating with particular persons, refraining from going to certain areas, and being under home supervision with or without electronic monitoring. All of these conditions require that a defendant be able and willing to comply with and respect the government actors and property necessary to enforce them. See *People v. Parker*, 2024 IL App (1st) 232275-U, ¶ 44.

---

[4]The defendant also parenthetically suggests, with no citation to authority, that these same conditions would have mitigated his risk of willful flight. The State's petition for detention, however, was based solely on the defendant posing a real and present threat to the safety of the community and not on his likelihood of willful flight, and the circuit court's written order only addressed the defendant's threat. As such, we need not address this argument on appeal. See *People v. Alvarez*, 2025 IL App (1st) 251180-U, ¶ 24; See *People v. Page*, 2023 IL App (1st) 232012-U, ¶ 23 ("the risk of defendant's willful flight from prosecution did not form an alternative basis for the circuit court's decision. Even if it did, we need not address this issue further where the decision to detain defendant may be affirmed solely based on the risk to the victim[.]").

¶ 33    A proper consideration for assessing whether pretrial release conditions would reasonably ensure the safety of the community requires an assessment of "the *likelihood* of compliance by the defendant with all conditions of pretrial release." (Emphasis added.) 725 ILCS 5/110-5(a)(3)(A)-(B) (West 2022).

¶ 34    In the present case, after a review of the record, we find that the State established by clear and convincing evidence that there are no conditions that could mitigate the risk posed by the defendant to the safety of the community. To this point, the defendant's conduct underlying the charged offense was brazen and dangerous. Video surveillance footage showed him in a police station parking lot, at noon, using lighter fluid to set fire to his backpack whereupon he placed that backpack underneath an unknown detective's private vehicle, and sprayed it with more lighter fluid in an apparent attempt to make it explode. The defendant himself does not challenge the video footage and admits that he suffers from bipolar/schizoaffective disorder, which makes him volatile when he does not take his medication regularly. In addition, the record reveals that because of his mental health condition, the defendant has previously been hospitalized at Riveredge Hospital, and has resided with his sister, who has also been his legal guardian since 2019. The record further establishes that during that guardianship, the defendant's criminal behavior has escalated from simple misdemeanors to the instant violent felony offense.

¶ 35    The record therefore does not reflect that the defendant could adhere to court orders, requiring that he take his medication regularly, whether alone, or under the supervision of his present guardian. As things stand, where the defendant was already living with his guardian and in her control at the time of the instant offense, either she was unable to ensure that he was compliant with his medication regiment, or the medication itself was inadequate in curtailing his volatile behavior. In either scenario, the threat of danger posed to the public by the defendant's

volatile behavior could not be allayed by home confinement with electronic monitoring, which permits the defendant to leave his residence at least two days per week to participate in basic activities. See 730 ILCS 5/5-8A-4 (West 2022) ("At a minimum, any person ordered to pretrial home confinement with *** electronic monitoring must be provided with movement spread out over no fewer than two days per week, to participate in basic activities[.]") In both situations, just as now, the defendant (either unmedicated or inadequately medicated) would, at certain times have the freedom to go to any public location and engage in similarly volatile and dangerous behavior. Accordingly, under the record before us, the State sufficiently proved, and the court properly found that no conditions of release could mitigate the threat the defendant posed to the safety of the community, requiring his pretrial detention.

¶ 36                                III. CONCLUSION

¶ 37    For these reasons, we affirm the judgment of the circuit court.

¶ 38    Affirmed.