2023 IL App (1st) 23-2012-U
Order filed: December 28, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-2012B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23400523701 |
| SIMONE PAGE, | ) ) ) | Honorable John Wilson, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio III concurred in the judgment.

**ORDER**

¶ 1    *Held*: Denial of pretrial release is affirmed, where the circuit court did not abuse its discretion in finding that defendant posed a real and present threat to the safety of any person or the community and that no less restrictive conditions would avoid that threat.

¶ 2    Defendant-appellant, Simone Page, appeals from an order granting the State's petition to deny her pretrial release under the legislation commonly referred to as the SAFE-T Act or the Pretrial Fairness Act (the Act). See Pub. Act 101-652 (eff. Jan. 1, 2023).[1] For the following reasons, we affirm.

---

[1] While commonly known by these names, neither the Illinois Compiled Statutes nor the forgoing public act refer to the Act as the "Safety, Accountability, Fairness and Equity-Today" Act, *i.e.*, SAFE-T Act, or the "Pretrial Fairness Act." See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. Certain provisions of the

¶ 3    Defendant was arrested on September 28, 2023, and charged with attempted first degree murder. The complaint, as amended, alleged that on or about August 27, 2023, defendant committed the offense of attempted first degree murder when she "knowingly shot Keith Page in the face with a 9mm handgun, knowing said act would likely cause the death of Keith Page."

¶ 4    On September 29, 2023, the State filed a verified petition to deny defendant pretrial release, pursuant to sections 5/110-6.1(a)(1.5) and (a)(7) of the Code of Criminal Procedure of 1963 (Code). 725 ILCS 5/110-6.1(a)(1.5), (a)(7) (West 2022). Therein, the State generally alleged that the defendant is charged with a detainable offense—attempted murder—and that defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and that no less restrictive conditions would avoid that threat. More specifically, the petition alleged that defendant and the victim were divorced former spouses who continued to "spend time together [and] have a sexual relationship." On September 28, 2023, defendant and the victim were "hanging out" when a verbal altercation escalated, and defendant pointed a gun at the victim. Defendant then shot the victim in the face and "gloated" before calling for medical assistance at the victim's request. The petition also noted that defendant had an expired FOID card, had made inconsistent statements, and knew how to contact the victim.

¶ 5    A hearing on the petition was held on September 29, 2023, the same day as defendant's initial appearance in court and at which defendant was represented by counsel. Pursuant to section

---

legislation in question were amended by Pub. Act 102-1104 (eff. Jan. 1, 2023). See *Rowe*, 2023 IL 129248, ¶ 4. The supreme court initially stayed the implementation of this legislation, but vacated that stay effective September 18, 2023. *Id.* ¶ 52.

5/110-6.1(f)(2) of the Code (725 ILCS 5/110-6.1(f)(2) (West 2022)), the parties presented evidence at the hearing by way of proffer.

¶ 6 The State proffered that defendant and the victim were previously married, and although divorced they continued to see each other regularly and maintained a sexual relationship. On August 27, 2023, defendant and the victim went to the store and bought alcohol and then went back to defendant's apartment. Defendant became aggressive, and the victim decided to leave. He first went to the bathroom, and when he came out defendant was pointing a gun at him. Defendant fired one shot at the ceiling and a second shot at the victim's face. The victim fell face down onto the couch, and defendant gloated. Defendant's demeanor quickly changed, however, when she called 911 for medical assistance at the victim's request.

¶ 7 The victim, who had been shot in the mouth, suffered "a broken jaw, which had to be reconstructed, knocked out teeth and metal plate in his chin, two chipped vertebrae from the bullet. He still has bullet fragments stuck in the cheek." The victim had been released from the hospital by the time of the hearing. The 9mm handgun used in the incident was legally owned by defendant, though her FOID card had expired. The victim's phone showed that he and defendant had consistently texted about running errands or spending time together. Defendant had no criminal history, but she had provided inconsistent statements regarding the incident.

¶ 8 The circuit court then noted that a Public Safety Assessment Report had been prepared, and "under the new criminal activity scale defendant scores a 1 out of 6. Under the failure to appear scale, defendant scores a 1 out of 6."

¶ 9 Defense counsel proffered that defendant had no history of violence herself but had suffered abuse by the victim. On August 27, 2023, the victim became upset about defendant's new boyfriend. He then obtained defendant's gun from her closet and threatened to kill himself or

defendant. Defendant was merely trying to diffuse the situation by retrieving the gun from the victim and firing a warning shot at the ceiling. The victim then "rushed her," and that is when he was shot in the face. Defendant called 911, the victim was transported to the hospital, and defendant was then questioned at the police station and released without being charged.

¶ 10 Defendant's counsel also proffered that defendant has obtained multiple orders of protection against the victim, but the victim continues to violate them. Defendant has a job and cares for her family, while the victim has an "armed robbery in his background."

¶ 11 The State then proffered that the police reports reflected that defendant had provided four different versions of the events that transpired on August 27, 2023. The State also noted that there was no proof that an order of protection had ever been filed or served, nor was there any proof that the victim had ever violated an order of protection. Finally, the State proffered that the delay between the incident and defendant's arrest resulted from the fact that the victim was intubated and unable to communicate or be interviewed for some time.

¶ 12 The circuit court concluded that the State had shown by clear and convincing evidence that defendant was charged with the detainable offense of attempted first degree murder and that the proof was evident, and the presumption great that defendant committed that offense. The court also concluded that defendant posed a real and present threat to the safety of any person or the community, in that the victim was invited to defendant's house and defendant then shot him in the face. Additionally, the court found that no other conditions or combination of conditions could mitigate the real and present danger and threat to the safety of any person or the community, in that defendant would have access to the victim. In response to questioning by defense counsel regarding the 1 out of 6 that defendant had scored on the new criminal activity and failure to appear

scales in the Public Safety Assessment Report, the court specifically found that electronic monitoring was not a condition that could be imposed to adequately ensure the victim's safety.

¶ 13    The court therefore ordered defendant detained, and a written order reflecting these findings was entered the same day. Defendant timely appealed, pursuant to Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023). A supporting record and report of proceedings have been filed with this court, and both defendant and the State have filed a memorandum. While defendant has requested oral argument, Rule 604(h)(5) (eff. Sept. 18, 2023) specifically provides that in appeals under that rule "[o]ral argument will not be heard, except on the court's motion." We do not find oral argument necessary to resolve this appeal.

¶ 14    Pretrial release is governed by article 110 of the Code (725 ILCS 5/110 (West 2022)), as amended by the Act. Under the Code, the requirement of posting monetary bail has been abolished in Illinois as of September 18, 2023. See 725 ILCS 5/110-1.5 (West 2022); *Rowe*, 2023 IL 129248, ¶ 52. Now, "[a]ll persons charged with an offense shall be eligible for pretrial release before conviction. It is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022).

¶ 15    Pretrial release may only be denied in certain specific situations. 725 ILCS 5/110-6.1 (West 2022). Where—as is the case here—a defendant is charged with attempting to commit a forceable felony, and after filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community, and

(3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-2(a), 110-6.1 West 2022). The Code provides a nonexclusive list of factors that the circuit court may consider when making a determination that the defendant poses a real and present threat to any person or the community, which include: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Act. 725 ILCS 5/110-6.1(g) (West 2022).

¶ 16    Appeals of bail orders under Illinois Supreme Court Rule 604(c)(1) (eff. Sept. 18, 2023) have historically been reviewed using an abuse of discretion standard. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9). While Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023) provides a new procedure for these types of appeals considering the changes made to the Code by the Act, "the Act neither mandates nor suggests a different standard of review." *Inman*, 2023 IL App (4th) 230864, ¶ 11. "Therefore, absent a legislative mandate intended to disrupt this precedent, abuse of discretion remains the proper standard of review under the amended Code." *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18; see also, *People v. Bradford*, 2023 IL App (1st) 231785; ¶ 33.

¶ 17    An abuse of discretion occurs where the court's judgment is fanciful, arbitrary or unreasonable, or where no reasonable person would agree with the court's position. *Simmons*, 2019 IL App (1st) 191253, ¶ 9. In conducting this review, we will not substitute the circuit court's factual and credibility findings with our own. *Inman*, 2023 IL App (4th) 230864, ¶ 11. Nor will we substitute our judgment for that of the circuit court merely because we would have analyzed the appropriate factors differently. *Id*.

¶ 18    On appeal, defendant does not challenge the evidence that she has been charged with a detention-qualifying offense or that that the proof is evident or the presumption great that she committed that offense. Rather, defendant first contends on appeal that the circuit court erred in finding that the State met its burden of proving by clear and convincing evidence that defendant's pretrial release posed a real and present threat to the safety of the victim.

¶ 19    In making this argument, defendant initially asserts that while the nature and circumstances of the offense for which she was charged were violent, the evidence showed that she only shot the victim in self-defense. However, accepting this argument would require us to credit the version of events proffered by defense counsel over the version provided by the State at the detention hearing, and to do so despite the State's evidence that defendant provided several inconsistent statements regarding the shooting. Again, we will not substitute the circuit court's factual and credibility findings with our own. *Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 20    Defendant also asserts that the circuit court erred in ordering her detained where she had no criminal history and where she was no longer in possession of a firearm and would not have access to one if she were released. In making this argument, however, defendant is essentially asking this court to substitute our judgment for that of the circuit court merely because we would

have analyzed the appropriate statutory factors differently, which is precisely what we are not to do. *Id.*

¶ 21　Next, defendant notes that the circuit court erred in ordering her detained considering the 1 out of 6 she scored on the new criminal activity scale in the Public Safety Assessment Report, which the circuit court specifically cited to and relied upon in reaching its decision. However, while the report of proceedings reflects that the circuit court relied upon the report at the hearing, the report has not been included in the record on appeal. As the appellant, it was defendant's burden to provide a sufficiently complete record on appeal so that this court can be fully informed about the issues. *People v. Moore*, 377 Ill. App. 3d 294, 300 (2007). Any doubts arising from the incomplete record will be resolved against defendant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Without the report itself to review, we are unable to determine what exactly it may add or subtract from the circuit court's conclusion on this issue. Absent a complete record, we must presume the trial court's judgment conforms to the law and has a sufficient factual basis. *Moore*, 377 Ill. App. 3d 300.

¶ 22　Defendant next asserts that that the circuit court erred in finding that the State met its burden of proving by clear and convincing evidence that less restrictive conditions would not avoid the risk to the victim, and that therefore the circuit court erred in ordering her pretrial detention. In making this argument, however, defendant again relies upon her version of events and the 1 out of 6 she scored on the new criminal activity scale. We reject these arguments here for the same reasons we rejected them above. While defendant also generally asserts that placing her on electronic monitoring or home detention would ameliorate any risk to the victim, the circuit court specifically noted that the victim was invited to defendant's house before he was shot and that there was evidence that defendant knew how to contact the victim. Indeed, there was evidence that

defendant and the victim continued an intimate relationship despite their divorce and despite defendant's claims of prior domestic abuse. Defendant does not explain how electronic monitoring or home detention would prevent defendant from having access to the victim considering this evidence, or how the circuit court's conclusion that such conditions were inadequate to ensure the victim's safety was fanciful, arbitrary or unreasonable. *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 23     Finally, defendant contends that the circuit court erred in ordering her detained where there was no evidence that she presented a risk of willful flight from prosecution. However, the State's petition did not purport to rely upon this alternative statutory risk factor, the State made no argument as to this factor at the hearing, and the circuit court's written order did not rely upon a finding as to this risk to justify defendant's detention. It is true that at the hearing, in responding to questioning by defense counsel regarding the 1 out of 6 that defendant had scored on the new criminal activity and failure to appear scales in the Public Safety Assessment Report, the court specifically found that electronic monitoring was not a condition that could be imposed to adequately ensure both defendant's "appearance or the safety to the complaining witness." However, this is the only brief reference to the risk of flight factor in the entire record. Therefore, the risk of defendant's willful flight from prosecution did not form an alternative basis for the circuit court's decision. Even if it did, we need not address this issue further where the decision to detain defendant may be affirmed solely based on the risk to the victim, as discussed above.

¶ 24     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 25     Affirmed.