2024 IL App (1st) 241039-U

No. 1-24-1039B

September 10, 2024

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 24 CR 2263 |
| | ) | |
| NATHAN FRAZER, | ) | The Honorable |
| | ) | James M. Obbish, |
| Defendant-Appellant. | ) | Judge, presiding. |
| | ) | |

_____

JUSTICE SHARON ODEN JOHNSON delivered the judgment of the court.
Justices Mitchell and Navarro concurred.

**O R D E R**

¶ 1    *Held*: We affirm the trial court's denial of pretrial release. Its findings were not against the manifest weight of the evidence where the victim and an eyewitness identified defendant as the person who pointed a gun at the victim and shot her in the face at point blank range in a moving vehicle and where defendant was subject to an order of protection in another case in which he threatened to shoot the victim in that case as well as her family. Further, defendant failed to file a written motion for relief which is now a prerequisite to appeal, effective April 15, 2024.

¶ 2 Defendant-appellant Nathan Frazer, by and through his attorney, brings this appeal under Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024) challenging the circuit court's order entered on April 17, 2024, pursuant to, what is commonly known as, the Pretrial Fairness Act (PFA).[1] Defendant was charged with attempted murder, after he allegedly shot the victim in the face on November 18, 2023, when they were both seated in a moving vehicle. For the following reasons, we affirm.

¶ 3 BACKGROUND

¶ 4 Defendant was eventually charged with four counts of attempted murder and one count of aggravated battery due to discharge of a firearm. All the charges stemmed from a single shooting event on November 18, 2023. On February 1, 2024, the State filed a petition for pretrial detention which the trial court granted the same day.

¶ 5 In its brief to this court, the State sets forth the following procedural facts: On March 6, 2024, the case was superseded by indictment and transferred for arraignment. On March 14, 2024, defendant was arraigned and the case continued by agreement to April 4, 2024, for defendant's petition for pretrial release. The case was continued again by agreement to April 17, 2024, for defendant's petition for pretrial release.

¶ 6 On April 17, 2024, defendant filed his petition for release and the trial court held a hearing on his petition on the same day. In his petition, defendant alleged that he was 23 years old and lived with his mother and sister in Skokie, and that he had substantial family in the Chicago area. Attached to his petition were pay statements from a restaurant for November

---

[1] In 2021, the General Assembly passed two separate acts that "dismantled and rebuilt Illinois's statutory framework for the pretrial release of criminal defendants." *Rowe v. Raoul*, 2023 IL 129248, ¶4 (discussing Pub. Act 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023) (amending 725 ILCS 5/art. 110) (the Pretrial Fairness Act) and Pub. Act 102-1104 (eff. Jan. 1, 2023) (the Follow-Up Act).

and December 2023. Defendant included letters from an aunt, a brother, his mother, two sisters, a neighbor, a co-worker and friends.

¶ 7     At the hearing, his attorney noted that defendant had graduated high school, that he had been working for two and a half years at the same restaurant in Skokie, that he had no criminal history, that his pretrial services assessment reflected only a "1" for new criminal history and for "failure to appear." Defense counsel argued that, although the victim and one other woman in the car identified defendant as the shooter, there were two other men in the car besides defendant and one of the other men was the boyfriend of one of the women.

¶ 8     Counsel stated that it was the defense theory of the case that one of the other young men in the car was playing with the gun when it went off accidentally and struck the victim who was in the front seat of the car. Counsel argued that the two women identified defendant because "he was the only one in the car they didn't know."

¶ 9     Counsel argued that body-cam footage after the incident shows the police asking the women about the men in the car and one of the women saying they were Mexican. Counsel argued regarding defendant: "He's not Mexican. He doesn't look Mexican[.]"[2]

¶ 10     Counsel further argued that, although this incident occurred on November 18, 2023, and defendant was not arrested until January 30, 2024, defendant did not try to reach out to any of the people involved in this incident.

¶ 11     In response, the State made a proffer of the following facts: that, on November 18, 2023, defendant went over to the apartment of the 20-year old victim who he had met once before during the summer of 2022; that defendant was taken to the apartment by "Witness 1";

---

[2] In his brief to this court, defendant alleges that he was born in Belize, raised in Belize and New York, and moved to Chicago when he was 17 years old.

that "Witness 2 and Witness 3" were already there; that Witness 3 had never met defendant before and Witness 2 had met defendant in the hours before; that everyone knew defendant by the nickname of "Flaco";[3] that defendant arrived holding a bottle of alcohol and his pupils were dilated; that he was agitated when he arrived at the victim's apartment and was asking everyone where his phone was; that, after locating his phone in Witness 1's car, the white Lexus which he had arrived in, he was quiet and not interacting with others; that all five individuals (defendant, victim and three witnesses) hung out in the victim's apartment for two hours; that, at 4:30 a.m., Witness 1 told defendant that he was going to take defendant home; that all five individuals got into Witness 1's car to take defendant home; that Witness 1 sat in the driver's seat; that the victim sat in the front passenger seat; that Witness 3 sat behind the victim; and that Witness 2 sat in the middle back seat while defendant sat behind the driver's seat.

¶ 12     The State further stated in its proffer: that, once in the car, defendant became agitated again and yelling for them to take him home; that, once they began driving, defendant tried to open the car door and get out while yelling that he was going to leave; that the victim turned and yelled at defendant to stop acting that way because the victim had neighbors; that the victim and defendant began yelling at each other; that defendant got out of his seat and lunged at the victim, while Witness 2 tried to block defendant and the driver put his right arm out to hold defendant back; that the victim turned her body toward the back so defendant and the victim were facing each other as they yelled at each other; that the victim yelled at defendant that he would not do anything; that defendant pulled out a gun from the right side of his waistband and said to the victim "who isn't going to do anything, bitch," that defendant aimed

---

[3] "Flaco" means skinny in Spanish.

the firearm and shot immediately, straight into the victim's face; and that the bullet exited out of the victim's neck.

¶ 13    The State further stated in its proffer:  that the car slowed down and the victim opened her door and threw herself out of it, rolling out to the curb; that Witness 3 opened her door and ran out to help the victim; that Witness 1 drove away, that Witness 2 was dropped off a block or two away; that the victim's phone was thrown out of the car several streets away; that Witness 3 called 911 and helped the victim put pressure on her cheek where it was bleeding; that the victim was taken to the hospital where she remained for six days; that Witness 3 found the driver on social media and sent detectives a photo of Witness 1 and a house with a street number; that detectives found the house and the white Lexus with blood on the outside; that, after obtaining a search warrant, blood was recovered from the inside of the car; and that Witness 3 and the victim positively identified defendant as the shooter.

¶ 14    The State further noted in its proffer that, as detectives were towing the white Lexus, Witness 1, the driver, came outside and spoke to the police briefly; that he stated that he was just driving and that he had not done anything; and that he then asked for a lawyer.

¶ 15    The State also noted that there was a "stalking/no contact order" entered on January 11, 2022, with a projected expiration date of September 1, 2024, for a separate party who was not the victim in the case at bar. The State said that the petition in support of the protective order alleged that defendant sent a message through Facebook Messenger stating "you're going to die," that defendant threatened to kill the protected woman's family, that, in another Facebook message, defendant pointed a gun at the camera and stated he was going to kill her and her family.  The State alleged that the gun was unregistered and illegal, and that the order included "numerous protected parties."

¶ 16　　　　Defense counsel stated that it was defendant's understanding that the order of protection had been dismissed and that, in any event, it was unrelated to the case at bar.

¶ 17　　　　The court reviewed defendant's mitigation evidence and arguments but found the State's proffer credible on its face and doubted that a shooting victim would identify someone as the shooter who was not the shooter. The court noted that one of the women could have identified defendant as Mexican due to the fact that defendant's nickname was Flaco, which the court observed was a common Spanish nickname.  After denying his petition for pretrial release, the court informed defendant that he had a right to appeal the court's decision and reviewed defendant's appeal rights with defendant.

¶ 18　　　　In its simultaneously-issued written order, the trial court found (1) that attempted first degree murder with a firearm was a detainable offense; (2) that the proof was evident that defendant committed this offense and that he posed a real and present threat when "[d]uring verbal argument, defendant produces gun and shoots female victim in the face," and (3) that no condition or combination of conditions can mitigate the real and present danger defendant poses to the community and to the victim or mitigate his risk of flight "based on his inability to control his violent behavior"  and the fact that he was "also [the] subject of a prior order of protection where he threatened to shoot protected parties."

¶ 19　　　　On May 1, 2024, defendant filed a notice of appeal and subsequently filed a motion for extension of time to file a brief, which this court granted.  In light of the extension which we granted, this court entered an order finding good cause to extend the disposition deadline to September 12, 2024.

¶ 20　　　　　　　　　　　　　　ANALYSIS

¶ 21    In his brief to this court, defendant argues that the proof was not evident that defendant committed the crime where the State proffered that only two of the four other vehicle occupants identified defendant as the shooter and that defendant does not pose a threat where he has no prior criminal history.

¶ 22    Pretrial release is governed by Article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq* (West 2022)), and this article provides that a defendant's pretrial release may be denied only in certain statutorily limited situations. First, for pretrial release to be denied, the State must file a petition. 725 ILCS 5/110-2(a) (West 2022). Second, when a court considers the issue of release or detention, "[a]ll defendants shall be presumed eligible for pretrial release, and the State shall bear the burden of proving by clear and convincing evidence" that the following three propositions are true:  (1) that the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) that the defendant's pretrial release poses a real and present threat to the safety of any person or the community, and (3) that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-2(e) (West 2022).

¶ 23    To determine whether the defendant poses a real and present threat to any person or the community, the court may consider this non-exhaustive list of factors: 1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; 2) the history and characteristics of the defendant; 3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; 4) any statements made by or attributed to the defendant, together with the circumstance surrounding the statements; 5) the age and physical condition of the defendant; 6) the age and

physical condition of the victim or complaining witness; 7) whether the defendant is known to possess or have access to any weapons; 8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or other form of supervised release from custody; and 9) any other factors, including those listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)). 725 ILCS 5/110-6.1(g) (West 2022).

¶ 24    Upon finding that the defendant poses a threat to the safety of any person or the community, the defendant's likely willful flight to avoid prosecution, and/or the defendant's failure to abide by previously issued conditions of pretrial release, the trial court must determine if pretrial release conditions will reasonably ensure the appearance of a defendant and the safety of any other person or the community and the likelihood of compliance with all the conditions of pretrial release.725 ILCS 5/110-5(a) (West 2022).   The court must consider 1) the nature and circumstances of the offense charged; 2) the weight of the evidence against the defendant; 3) the history and characteristics of the defendant; 4) the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release; and 5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process.  725 ILCS 5/110-5(a) (West 2022).

¶ 25    The trial court's determination regarding the dangerousness and/or conditions of release are reviewed for an abuse of discretion.  *People v. Simmons*, 2019 IL App (1st) 191253, ¶¶ 9, 15.  An abuse of discretion occurs when the decision of the trial court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court. *Id.*

¶ 26    A trial court's finding that the State presented clear and convincing evidence that mandatory conditions of release would fail to protect any person or the community, and/or that

the defendant had a high likelihood of willful flight to avoid prosecution, or that the defendant failed to comply with previous conditions of pretrial release thereby requiring a modification or revocation of the previously issued conditions of pretrial release, will not be reversed unless those findings are against the manifest weight of the evidence. *E.g. People v. McFarland*, 2024 IL App (1st) 240615-U, ¶ 20. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill.2d 322, 332 (2008). Under this standard, we give deference to the trial court as the finder of fact as it is in the best position to observe the conduct and demeanor of the witnesses." *Deleon*, 227 Ill. 2d at 332.

¶ 27    Based on our review of the record, the trial court's determination that defendant met the standard of dangerousness, posing a real and present threat to the safety of any person or persons in the community, is not against the manifest weight of the evidence. Specifically, the charge of attempted murder is a detainable qualifying offense under the Code (725 ILCS 5/110-6.1(a)(1.5) (West 2022))[4] and the proof is evident and the presumption great that the defendant committed said offense given the State's proffer of the statements of two eyewitnesses, namely, the victim and another witness, who had been in defendant's company for hours. *People v. Conway*, 2023 IL 127670, ¶ 18 (it is well established that a single eyewitness identification is sufficient to sustain a conviction); *People v. Woodson*, 2023 IL App (1st) 191353, ¶ 106 (when an eyewitness knew the shooter prior to the shooting, it "reduc[es] the risks often associated with eyewitness identification")

---

[4] Both attempted murder and aggravated battery due to discharge of a firearm are forcible felonies and hence detainable offenses under the PFA. 725 ILCS 5/110-6.1(a)(1.5) (West 2022).

¶ 28    Defendant argues that a lack of identifications from the two men in the car casts doubt on the identifications by the two women. A lack of statements from the two men, who stayed in the car which drove off after the shooting, could just as easily suggest that they invoked either their right against self-incrimination, out of fear of being accused of being an accessory after the fact, or their sixth-amendment right to counsel. In fact, the State's proffer included an allegation that one of the two men did just that. The State reported that Witness 1, who was the driver, invoked his right to counsel when speaking with police.

¶ 29    The trial court carefully considered, as did we, the numerous letters submitted on defendant's behalf, as well as the mitigating factors of age, education, employment and lack of prior criminal history. However, it is evident that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community, given that defendant reportedly shot someone in the face during an otherwise verbal argument; that he was already subject to an order of protection in another case in which he allegedly threatened to shoot and kill the victim in that case and her family and allegedly displayed an illegal gun to back up that threat; and that home confinement, pretrial services, a curfew and electronic monitoring do not prevent access to, possession of, or use of illegal guns to make threats against female victims.

¶ 30    Before the trial court and before this court, the State argued that its burden is less because defendant did not appeal a prior detention order. The trial court did not find this argument persuasive. On appeal, we note that it does not matter on the facts of this case whether the State's burden was lessened. Release is not warranted on these facts under either standard of review. Regarding solely the question of pretrial release, on these proffered facts,

this is not a close case. This is no reflection, however, on what may or may not be proven in the future.

¶ 31                                            CONCLUSION

¶ 32            For all the foregoing reasons, we affirm the trial court's order of pretrial detention.

¶ 33            Affirmed.