2025 IL App (1st) 251180-U

FOURTH DIVISION
Order filed: September 18, 2025

No. 1-25-1180B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 08145 |
| | ) | |
| JOSE ALVAREZ, | ) | Honorable |
| | ) | Michael McHale, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE QUISH delivered the judgment of the court.
Presiding Justice NAVARRO and Justice OCASIO concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's orders denying the defendant pretrial release are affirmed. The State's proffer established by clear and convincing evidence that the proof is evident or presumption great that defendant committed a qualifying offense, defendant posed a real and present threat to the surviving victim and no condition or combination of conditions could mitigate the risk posed by defendant. The circuit court's oral findings, viewed in conjunction with its written detention order, sufficiently stated that it found the State met its burden to detain defendant. The circuit court did not err by having the State fill out a portion of the detention order.

¶ 2      The defendant, Jose Alvarez, appeals from the circuit court's orders of January 16, 2025, and June 6, 2025, denying him pretrial release pursuant to Section 110-6.1 of the Code of Criminal Procedure, commonly referred to as the Pretrial Fairness Act ("Act") (725 ILCS 5/110-6.1 (West 2024)), and denying his Motion for Relief Under the Pretrial Fairness Act. For the following reasons, we affirm.

¶ 3      Defendant was arrested on July 3, 2023, and charged with two counts of first degree murder and one count of attempted first degree murder, among other charges. An initial detention hearing was held on July 6, 2023, prior to the implementation of the Act, and defendant was denied release and held without bail. On January 9, 2025, defendant filed a petition for pretrial release pursuant to the Act. The State filed a petition for pretrial detention on January 16, 2025.

¶ 4      The circuit court held a detention hearing on January 16, 2025, where the State proceeded by proffer. The State's proffer stated that the case involved three victims; defendant's wife ("Victim 1"); their 15-year-old daughter ("Victim 2"); and their 18-year-old son ("Victim 3"). On June 20, 2023, the victims left the home they shared with defendant after Victim 1 had an argument with defendant regarding his failure to attend a scheduled drug treatment evaluation. The next day, Victim 1 obtained an order of protection against defendant. The order of protection was never successfully served, and the victims returned to the residence on June 26, 2023, after a conversation between Victim 1 and defendant during which defendant agreed to enter a drug rehabilitation program.

¶ 5      According to the State's proffer, on July 2, 2023, at around 10:00 p.m., Victim 1 returned home after work. Victims 2 and 3 were on the couch in the living room watching television. Defendant began harassing Victim 1 and accusing her of cheating on him. Victim 1 told defendant

to stop and went to the living room with her children. After a few minutes, defendant came into the living room and continued accusing Victim 1 of cheating on him. Defendant began banging on a drum set in the living room and making threatening comments, including stating "as soon as the music stops, this is all over." Victim 3 knew defendant had a gun and took defendant's comments as a threat that he intended to harm the family. Victim 3 told defendant to stop, and when defendant refused, Victim 3 stated he was going to call 911.

¶ 6    Victim 3 began to walk towards his bedroom and defendant followed him. Defendant shoved past Victim 3 and continued to defendant's own bedroom, with Victim 3 following him. Victim 3 observed defendant lift a pillow from his bed, revealing a Glock 17 handgun. Defendant picked up the gun, removed it from the holster, and left the bedroom. Victim 3 ran from the bedroom shouting "no, don't do it" and took cover under the dining room table.

¶ 7    Defendant walked through the dining room towards the living room. Victim 3 heard Victims 1 and 2 screaming and shouting "please don't" from the living room. Victim 3 then heard multiple gunshots. Defendant returned to the dining room, stood next to the table where Victim 3 was hiding, and fired several times under the table. Victim 3 was struck by a bullet in his ankle.

¶ 8    Defendant stopped shooting and walked back to his bedroom. The police later recovered an additional magazine in his bedroom. Victim 3 ran out of the house and across the street and hid behind a parked car. Victim 3 wrapped his ankle with his t-shirt and limped down the street calling 911. A POD camera from the block showed Victim 3 leaving the house, hiding behind a car, and limping down the block while calling police. Defendant followed Victim 3 from the house shouting at him in Spanish, which was captured by a cell phone recording from a neighbor. A Spanish-speaking detective translated what defendant said as "Fucking bitch. Sons of bitches. That's what

you wanted. You wrecked my fucking life, you fuckers." Several neighbors also called the police, reporting that they heard multiple gunshots and saw Victim 3 flee the home.

¶ 9    When police arrived, Victims 1 and 2 were on the couch in the living room and were deceased. Victim 1 had eight gunshot wounds, including two to her face. Victim 2 had two gunshot wounds, including one to her face. The medical examiner determined the cause of death for both Victims 1 and 2 to be multiple gunshot wounds, and the manner of death to be homicide. The POD camera nearby captured the sound of fourteen gunshots before Victim 3 is observed running from the apartment. Police recovered defendant's Glock 17 from his bed with one round in the chamber, and an additional magazine nearby. Defendant made statements to police indicating that he felt he was the victim of domestic violence, but did not have any injuries and did not request medical attention.

¶ 10    The State argued that defendant posed a real and present threat as defendant murdered his wife and daughter and attempted to kill his son. The State argued that defendant's actions of killing his wife and child in cold blood showed that he was volatile and a risk to anyone in the community. The State stated that Victim 3 was a witness against defendant and would be at risk if defendant were released. The State maintained that no condition or combination of conditions would mitigate the threat posed by defendant to Victim 3 or the community because GPS could only go so far in alerting a victim of an offender's presence and a victim's safety is dependent on police response time. The State argued that electronic monitoring would allow defendant "two unfettered days of access wherever he wanted to go" and that defendant's actions demonstrated that an order of protection will not keep others safe from him. The State asked that defendant remain detained before trial.

¶ 11    In mitigation, defense counsel noted that the Pretrial Services report from the original detention hearing listed defendant with a score of 1 for both the "new criminal activity" and "failure to appear" scales. Counsel argued that "this is most likely an isolated incident" and that defendant did not pose a risk to the community. Counsel stated that defendant had multiple health issues that had worsened while he was in custody and asked for release so defendant "may be able to further address all his ailments" with "whatever restrictions that your Honor feels necessary."

¶ 12    The circuit court found the evidence in the State's proffer was "overwhelming" based on the eyewitness account of Victim 3 and the POD camera and cell phone video which captured the gunshots and aftermath, including Victim 3 "leaving the house and moving down the street despite being shot in the ankle, calling 911 with the defendant coming out and screaming toward his son." The court found that the State showed by clear and convincing evidence that the proof is evident and the presumption is great that defendant committed the charged offenses. As for the second prong, the court found that defendant posed a real and present threat to the safety of Victim 3 and the community and his actions, along with alleged drug and alcohol abuse, showed that defendant lacked the ability to control himself.  The court found defendant's ongoing drug and alcohol abuse made it "more aggravating or more likely for him to present a threat to the safety of not only his son but anyone in the community."  The court found that the fact that defendant shot his wife and daughter in the face was "a very personal thing" and showed the intent and level of anger that defendant exhibited toward them. The circuit court acknowledged defendant's low scores in the Pretrial Services report, but chose to ignore the report because "their ultimate conclusions are utterly ridiculous given the facts that I see here." The court also acknowledged defendant's health issues, but found that they would not prevent him from using a firearm. The circuit court found

that defendant posed a threat and no condition or combination of conditions would mitigate that threat due to defendant's volatility and the limitations of police response time. The court granted the State's petition to detain defendant before trial.

¶ 13    The circuit court entered a written order on January 16, 2025, finding that the State had shown by clear and convincing evidence that: the proof was evident or the presumption great that defendant had committed an eligible offense as listed in 725 ILCS 5/110-6.1(a)(1)-(7) (West 2024); defendant posed a real and present threat to the safety of any person or persons or the community based on the specific articulable facts in this case; and that no conditions or combination of conditions of pretrial release could mitigate the real and present threat posed by defendant to the safety of any person or persons or the community. In support of those findings, the court found the proof was evident or presumption great that defendant had committed first degree murder and attempted first degree murder, defendant posed a threat to his son and anyone in the community based on the fact that he killed two family members in cold blood by shooting them in the face and attempted to kill a third family member, and no conditions could mitigate that threat because defendant was volatile and could not control his anger, and because electronic monitoring could not prevent defendant from obtaining a firearm.

¶ 14    On May 27, 2025, defendant filed a motion for relief. See Ill. Sup. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In that motion, defendant argued that: (1) the circuit court did not make findings at the detention hearing that the State showed the proof was evident or presumption was great that defendant committed an eligible offense or that he posed a real and present threat to the community by clear and convincing evidence; (2) the State failed to meet its burden to show by clear and convincing evidence that defendant posed a real and present threat to the safety of any person or

the community based on the specific, articulable facts of the case; (3) the State failed to prove by clear and convincing evidence that defendant posed a risk of willful flight and the circuit court erred by not considering defendant's ties to Chicago in determining whether defendant was a flight risk; (4) the State did not present evidence that defendant's release would endanger the wider community; (5) the State failed to show by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community; (6) the State failed to present alternatives to detention and did not provide an explanation as to why each and every alternative was not a suitable one for defendant; and (7) the circuit court erred when it had the State fill out the detention order with a summary of the court's oral findings.

¶ 15    On June 6, 2025, the circuit court addressed defendant's Motion for Relief. First, the court reviewed the transcript of the January 16, 2025, detention hearing and noted that it found that the State met its burden by clear and convincing evidence that the proof was evident or presumption was great that defendant committed an eligible offense and that defendant posed a real and present threat. The court noted that it did not address willful flight because it was not argued by the State, and the State was not required to argue both that defendant posed both a real and present threat and presented a risk of willful flight. It rejected defendant's contention that its finding that defendant posed a real and present threat was against the manifest weight of the evidence, given that the State's proffer stated that defendant murdered his wife and daughter and attempted to murder his son. The court did consider both defendant's mental health issues and medical issues at the detention hearing. Finally, the court rejected defendant's contention that it erred by having the State fill out the detention order, stating that "[t]he State may have filled out a portion of the

order, but I, ultimately, wrote in my reasons for why I made those decisions." The court then denied defendant's motion. This appeal follows.

¶ 16     Pretrial release is governed by the Act, which presumes that a defendant is eligible for pretrial release, and that release may only be denied in certain limited situations. 725 ILCS 5/110-2(a); 725 ILCS 5/110-6.1 (West 2024). Upon the filing of a verified petition requesting the denial of pretrial release, the State has the burden to prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense; (2) the defendant poses a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, by conduct which may include a forcible felony; and (3) no condition or combination of conditions of pretrial release set forth in section 110-10(b) can mitigate the real and present threat posed by the defendant to the safety of any person or persons or the community, based on the specific articulable facts of the case, for certain offenses, or the defendant's willful flight. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2024).

¶ 17     A trial court may order a defendant detained pending trial if it finds that the State has met its burden as to all three propositions. *People v. Morgan*, 2025 IL 130626, ¶ 41. When the State presents evidence by proffer rather than by live testimony, as in this case, we review the circuit court's decision to detain the defendant *de novo*. *Id.* ¶ 54. We review the evidence proffered by the State and any other documentary evidence with "no deference to the decision of the circuit court." *Id.* ¶ 22.

¶ 18     Defendant has opted to stand on the issues raised in his motion for relief. Therefore, we consider the issues raised in that motion in this appeal. See Ill. Sup. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

¶ 19 First, defendant argues that the circuit court failed to make findings at the detention hearing that the State established the first two propositions by clear and convincing evidence. At the hearing on January 16, 2025, the circuit court found the evidence was "overwhelming" and stated that "the State has shown by clear and convincing evidence the proof is evident and the presumption is great." Regarding the second prong, the circuit court stated that defendant "most certainly does" pose a threat, but did not specifically state that it found the State proved this proposition by clear and convincing evidence. The circuit court's written order, however, states that it found that the State showed each of the three propositions by clear and convincing evidence.

¶ 20 When evaluating the circuit court's denial of pretrial release and assessing the sufficiency of a trial court's rulings, "its written findings must be read in conjunction with its oral pronouncements." *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19. While the circuit court did not specifically cite the clear and convincing evidence standard in this portion of its oral ruling, when viewed in conjunction with its written order, it found that the State met its burden of proving each of the three propositions by clear and convincing evidence based on the specific articulable facts of this case. We find no error.

¶ 21 Defendant next argues that the State failed to meet its burden of showing that he posed a real and present threat to any person or the community by clear and convincing evidence. Section 110-6.1(g) of the Act sets forth nine factors the court may consider when determining whether the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. 725 ILCS 5/110-6.1(g) (West 2024). Relevant to this case, those factors include "the nature and circumstances of any offense charged," evidence indicating defendant's "violent, abusive, or assaultive nature," "[t]he identity of any person or

persons to whose safety the defendant is believed to pose a threat," "[t]he age and physical condition of the defendant," and "[w]hether the defendant is known to possess or have access to any weapon or weapons." *Id.*

¶ 22 The State's proffer presented evidence that defendant was alleged to have shot at three family members multiple times, killing his wife and daughter by shooting them in the face, shooting his son in the ankle while he hid under a table, attempting to reload his weapon and then chasing his son out of the house while shouting at him. The State also provided evidence that defendant had previously been abusive to his family members, there was an unserved order of protection issued two weeks before the crime, and defendant had access to firearms. Victim 3 survived the shooting and is a witness against defendant. Even considering that defendant's health issues may limit his potential dangerousness, we find that the State established by clear and convincing evidence that defendant posed a threat to any person and the community.

¶ 23 Defendant next asserts that the circuit court failed to consider his medical issues in determining the threat he posed. At the detention hearing, the circuit court addressed the defendant's medical issues and observed that defendant's physical ailments would not "stop him from pulling a trigger" even if he was "moving slow." Given that the facts of the offense involved defendant's use of a firearm, we agree with the circuit court that any physical ailments would not prevent him from committing similar acts in the future.

¶ 24 Defendant also argues that the State failed to present clear and convincing evidence that he posed a risk of flight and that the circuit court failed to consider his ties to Chicago. As observed by the circuit court, the State did not proceed on a theory of willful flight in its petition for pretrial detention, nor was it required to do so. The Act allows the State to seek detention of a defendant

on several different bases, including that the defendant presents a "real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case" or the defendant's willful flight. 725 ILCS 5/110-6.1(e) (West 2024). Here, the State met its burden to show that defendant posed a real and present threat to the safety of any person and the community and thus, the State was not required to separately prove the alternative statutory risk factor that defendant posed a flight risk. See *People v. Page*, 2023 IL App (1st) 232012-U, ¶ 23 ("the risk of defendant's willful flight from prosecution did not form an alternative basis for the circuit court's decision. Even if it did, we need not address this issue further where the decision to detain defendant may be affirmed solely based on the risk to the victim[.]").

¶ 25    Defendant also argues that the State did not present evidence that his release would endanger the wider community. We disagree that the State was required to present such evidence. The State proceeded under the section of the Act which allows for a defendant to be detained if he presents "a real and present threat to the safety of any person or persons **or** the community." 725 ILCS 5/110-6.1(a)(1.5) (West 2024) (emphasis added). As this section uses "or" rather than "and," this requirement can be met by a showing that the defendant poses a real and present threat to either to (1) any person or persons or (2) the community. As discussed above, the State presented evidence that defendant posed a threat to Victim 3, an eyewitness against defendant, by shooting at him multiple times after shooting Victims 1 and 2. Contrary to defendant's assertion, the State was not required to provide separate evidence that defendant also posed a threat to the wider community.

¶ 26    Defendant's next claim of error is that the State failed to meet its burden to show by clear and convincing evidence that no condition or combination of conditions can mitigate the threat he

posed. In determining which, if any, conditions of pretrial release will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of defendant's compliance with all the conditions of pretrial release, the Act requires the circuit court to consider such matters as: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2024).

¶ 27   Based on the State's proffer, defendant allegedly provoked an argument with his wife, culminating in him shooting his wife and daughter multiple times including in the face, and shooting at his son. The actions described in the State's proffer demonstrated that defendant was volatile and lacked control over his anger. As noted by the State at the detention hearing, the effectiveness of GPS monitoring is limited by police response time, and electronic monitoring would necessarily allow defendant two days of movement for basic activities. See 730 ILCS 5/5-8A-4(A-1) (West 2024). We agree with the circuit court that such conditions would not mitigate the real and present threat posed by defendant. Given the facts of this case and the limitations of pretrial monitoring, we find that no condition or combination of conditions is sufficient to mitigate the real and present threat posed by defendant. See *People v. Frazer*, 2024 IL App (1st) 241039-U, ¶ 29 (finding that "it is evident that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community, given that defendant

reportedly shot someone in the face during an otherwise verbal argument" and observing that possible conditions of release "do not prevent access to, possession of, or use of illegal guns.").

¶ 28    Defendant next asserts that the State failed to present alternatives to detention or explain why each alternative was not "a suitable one for the defendant." However, "the State's burden of proof does not require it to specifically address every conceivable condition or combination of conditions and argue why each condition does not apply." *People v. Mikolaitis*, 2024 IL 130693, ¶ 20. "Absent from the statutory language outlining what the State must prove in order to detain defendant is any language requiring argument as to specific matters or language dictating what evidence or argument the State must present in attempting to meet its burden. Rather, the State must meet its burden and present sufficient evidence regarding the specific scenario presented by each case, such as the nature and circumstance of the offense, the defendant's criminal history, the defendant's risk assessment score, and other considerations known to the State at the time of the hearing, that allows the circuit court to determine whether pretrial release is appropriate." *Id.* Citations omitted.

¶ 29    The State presented such evidence regarding the statutory factors in determining which conditions of pretrial release, if any, will reasonably ensure the appearance of the defendant, the safety of any other person, the safety of the community and compliance by the defendant. See 725 ILCS 5/110-5; *Mikolaitis*, 2024 IL 130693, ¶ 23. The State also addressed GPS monitoring and electronic monitoring, explaining why the limitations of those conditions would not mitigate the threat posed by defendant. This was sufficient for the State to meet its burden to establish that no condition or combination of conditions would mitigate the threat posed by defendant.

¶ 30    Defendant's final claim is that the circuit court erred when it had the State fill out the detention order with a summary of the circuit court's findings. At the hearing on defendant's motion for relief, the circuit court acknowledged that the State "may have" filled out a portion of the order, but stated that the court wrote in the reasons supporting its decision to deny pretrial release. The other portions of the form used for the detention order involved checked boxes and a line stating that defendant was prohibited from contacting Victim 3. Defendant's motion for relief cites no authority that requires the circuit court to fill out the entire order itself. The circuit court filled in the substantive portions of the order stating the reasons why pretrial release was denied, which was also supplemented by the court's oral ruling. We find no error.

¶ 31    For the reasons stated above, we affirm the circuit court's orders granting the State's verified petition to deny pretrial release and denying the defendant's Motion for Release Under the Pretrial Fairness Act.

¶ 32    Affirmed.